THE CANEY GLASS COMPANY, Respondent, v. PITTSBURG PLATE GLASS COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

CONTRACTS: Construction. In a suit to recover differentials in freight rates which the plaintiff, a corporation engaged in the manufacture of glass, claimed the defendant, a glass jobber, was obligated to pay under a contract which was free and clear from all ambiguity on the question of differentials, the fact that defendant did not derive any benefit from this difference in freight which it had bound itself to pay plaintiff, and would be required to pay for the glass purchased under the contract more than if it had purchased the same glass upon the open market from time to time, is no reason why defendant should be relieved from the terms of this contract.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*J. W. Crowley* for appellant.

(1) If the contract be construed as contended for by respondent the result would be most inequitable

and unfair to appellant. When the wording of a contract permits, the courts will so construe it as so constitute a fair and equitable arrangement between the parties. Coghlan v. Stetson, 19 Fed. 727; Robinson v. Stowe, 39 Ill. 568; Bickford v. Cooper & Co., 41 Pa. St. 142; Royalton v. Woodstock, etc., Co., 14 Vt. 311; Russell v. Atherton, 108 N. Y. 288; McManus v. Shoe, etc., Co., 60 Mo. App. 216; Brick & Tile Co. v. Fuel Co., 82 Kan. 752. (2) The wording of the contract is ambiguous and therefore should be construed in the light of the surrounding circumstances. These considered, the contract would, if respondent's construction be adopted, render the contract from appellant's point of view most unreasonable and absurd. No man can be supposed to intend that which is absurd or unreasonable. Hanna v. So. St. Joseph Land Co., 126 Mo. 1. See also cases cited under subdivision 1. (3) The contract, according to appellant's construction, is reasonable and constitutes a just and sensible arrangement between the parties; and it is the only construction suggested that does this. (4) The failure of eastern factories to come into the territory of the Kansas factories on account of freight rates, and the fact that prices in the territory of the Kansas factories was on the basis of equalized freight rates, was tantamount to an equalization of such rates within the meaning of the contract. The testimony of Messrs. Dwyer and Henry to the effect that they did not come into competition with eastern factories within the field covered by the Kansas factories is competent and is of probative value as to the fact that the former did not enter that field. Wigmore Evidence (1904), sec. 664; Seligman v. Rogers, 113 Mo. 642; Blakey v. Blakey, 33 Ala. 611. (5) The testimony of witnesses Dwyer and Henry, excluded by the referee, was competent; and the action of the referee entitles appellant to a new trial. Masonic Mutual Ben. Soc. v. Ackland, 97 Mo. 137, 139. (6) The equalization of freight rates

on the Volker shipment, the only shipment made into the territory of the Kansas factories during the period covered by the contract, satisfied the condition of the contract regarding equalization of rates. (7) Appellant did not waive any right of defense to the claim for freight differentials, nor is it estopped from so doing. 29 Am. and Eng. Law, 1097.

*Gilmore & Brown* for respondent.

BROADDUS, P. J.—The respondent is a corporation engaged in the business of manufacturing glass at Caney, Kansas, and the appellant is a corporation with its principal office in Pittsburg, Pennsylvania, with branch offices at Kansas City, St. Louis, Omaha and other places. The respondent entered into a contract with appellant for a sale of respondent's output of glass during the season of 1906 and 1907. The appellant is engaged in the business of a glass jobber and bought the output of respondent's factory for the purpose of reselling it to others engaged in handling glass as a business or trade.

By the terms of the contract appellant agreed to pay to respondent the average price that it paid for glass as computed by its Pittsburg office, less a discount of three per cent, and also to pay the difference in freight between Caney, Kansas, and the point of destination, and the rate from Muncie, Indiana, to the point of destination, provided however, "that if the American Company or other reputable manufacturers of window glass are equalizing freight with Kansas factories, then the first party (respondent) is not to receive the freight allowance." The contract provided that settlements were to be made monthly of this freight differential, viz: the difference in freight rates between the two points mentioned and the point of destination.

Appellant received the output of respondent's factory as provided by the contract and paid therefor the average price agreed upon less three per cent discount. It made one settlement covering freight differentials on car load lots during the months of October and November, 1906. There were no computations on less than car load lots, that matter being postponed by agreement of parties. In the spring of 1907, when respondent asked that the matter of computations of the differentials be taken up, the appellant refused and asserted that it ought not to be required under the circumstances to pay such differentials. The suit is to recover differentials respondent claims appellant under the contract obligated to pay it.

The controversy arises over what should be the proper construction of that part of the contract relating to the question of differentials, which reads as follows: "In addition to this average cost the first party is entitled to receive as payment for goods shipped an amount equivalent to the difference in freight from Muncie, Indiana, to destination, and from Caney, Kansas, to destination, on the various shipments covered by this contract, except that if the American Company, or other reputable manufacturers of window glass are equalizing freight with Kansas factories, then the first party is not to receive the freight allowance."

The cause was referred, and the referee after hearing the evidence reported the amount of said differentials or freight allowances. There is no dispute as to the correctness of this finding. The referee also found that the American Company or other reputable manufacturers outside of the Kansas territory did not equalize freight with the Kansas factories. The plaintiff recovered and defendant appealed.

It is contended by apellant that it did not derive any benefit from this difference in freight and should not be compelled for that reason to pay it to respond-

ent. We quote from its argument as follows: "In the consideration of this provision, one point stands out above all others, and that is that the three per cent discount received by appellant under the contracts amounted to only between $3000 and $3500, while the differentials claimed amount to $5205.94, and therefore if respondent's construction is to be placed upon it, the appellant will be required to pay for the glass purchased under this contract more than if it had purchased the same glass upon the open market from time to time as its demands required," etc. Or, "In other words, if respondent's construction of the contract is adopted, the result will be most inequitable and unfair to appellant and give to respondent an advantage to which on moral grounds it is in no wise entitled."

Appellant seems to be impressed with the conviction that the construction put upon the contract by the court was improper and relies upon certain adjudications of the courts to sustain its position, some of which we will notice. In Coghlan v. Stetson, 19 Fed. 727, the language of the contract was obscure and the court said: "If the language used clearly establishes the defendant's version, it would unquestionably be the duty of the court to enforce it, but where the exact meaning is in doubt, where the language used is contradictory and obscure, if there are two interpretations, one of which establishes a comparatively equitable contract, and the other an unconscionable one, the former construction should prevail." "In construing contracts, the courts will endeavor to avoid what is unequal, unreasonable, and improbable, if this can be done consistently with the words of the contract." [Royalton v. Turnpike Co., 14 Vermont, 311.]

Other cases of similar character are cited, but as we find nothing in any of them that in the least tend to support appellant's view of the question we will not encumber the opinion by reference to them. The contract in question is not obscure nor contradictory in

its terms, but is clear and free from all ambiguity—there is nothing left for construction. All that appellant has to contend for is that, it did not realize the benefits from the contract that were expected.

Judgment affirmed. All concur.